Good afternoon, everyone. On behalf of myself and my colleagues, Judge Rader and Judge Dyke, we are pleased indeed to be holding this regular session of our court here at NYU. I must say I'm particularly pleased as an alumna of this noble law school. First case this morning, this afternoon, is number 2007-1080, Micron Technologies v. Mosaid Technologies. Mr. Lee. Thank you, Your Honor. May it please the court, my name is Bill Lee, and together with my partners, Todd Zubler and Greg Rantier, I represent the appellant, Micron. As the Supreme Court had decided Metamune and this court had decided its subsequent decisions in STMicro, Sony, and Teva. After Metamune and this court's decision, the focus or the crucial issue for this appeal is no longer the focus upon the interactions and context between the two parties and the question of whether suit is imminent or even likely, but whether there is a real and substantial dispute between them. Thus, we would suggest that the jurisdictional focus is upon the substance of the dispute. Are we asking the district court to resolve a dispute that's real rather than to render an advisory opinion that would fall outside the scope of Article III? Are we supposed to do that on a patent by patent basis? Your Honor, that is one of the key issues here. And the answer here is for the 14 patents, we can go on a patent by patent basis. And if I can answer it in two parts, I will. In this particular situation, there are 14 patents that are subject of the declaratory judgment action. On a patent by patent basis, seven of them were the subject of specific charges made by Mossadeq in the four letters sent in 2001 and 2002. The other seven, which we set forth on page 12 of our reply brief, were patents also in the portfolio, which were made the subject of litigation against Micron's major competitors during the period 2001 to 2006. Seven of the 950 patents? Yes, that's correct. And if you go on a patent by patent basis for that collection of patents and you apply the Supreme Court's totality of the circumstances test, so that we're not simply focusing upon the precise context between the two parties, but we're also considering, for instance, the 2005 public statement by Mossadeq, the 2006 public statement by Mossadeq, and the patents that were asserted against the other DRAM manufacturers, then on a patent by patent basis, there is a real and substantial dispute. The second part, which I don't think the Court needs to reach in this particular case, is frankly a thornier one. What happens when someone has a large portfolio of patents? What happens when they send a letter such as the June 6, 2001 letter that says, here are four patents that we think you need to consider, but in addition, here is a list of our entire portfolio, a list that was two pages long in this particular circumstance, and we believe if you're going to continue, if you're going to continue in your DRAM business, you need a license to all of those patents. But is your argument dependent on whether more than one patent is deemed to be incontroversial or would you be content with one or two? Your Honor, I think we would be content and we think that we would suggest the appropriate resolution is that the 14 are all in controversy and the dispute as to them is real and substantial. And if I could, Your Honor, the reason for it is this. If we look at the full range of circumstances that occurred from June 6, 2001 until the filing of the declaratory judgment action, the one thing that is clear is this. Mossadeq made it clear that it intended to pursue the people who occupied the DRAM technology market. They said in the 2005 annual report that four of those participants, Sony, Hynix, Infineon, Micron, those would be the four, occupied 75% of the market. They said, both in 2005 and 2006, that there were 14 people on notice and that they intended, and I'm quoting, to relentlessly pursue them. But what is your view of the district court's position that no matter how many patents were or weren't at risk and how many defendants, that there is absolute discretion on the part of the court? Your Honor, I don't think there is absolute discretion. Let me take that again and focusing just on the second part of the district court's decision. The first part, I think Mr. Dunner and I agree upon, which was the tenuousness of jurisdiction has been resolved by Sony. So the second part of the district court's decision is that dependency of the case in the eastern district of Texas as a matter of discretion led the district court to decline jurisdiction. But that was filed the day afterwards. Why isn't he entirely correct that the other district court can handle this law as Judge Fogle? Well, Your Honor, two answers to that question. The first is, you're 100% correct it was filed the day after. Nobody has a head start here. Why not just let the other district court handle it? Well, Your Honor, I would take the court back to the Genentech decision, which sets out as a presumptive rule that the first filed action, absent special circumstances, is presumptively the right forum. Again, these are essentially simultaneously filed, one day of difference. Unless we're going to start creating rules that give us races to the courthouse, let's assume they're kind of filed simultaneously. If that's the case, why wouldn't the policy support the patentee having the choice of forum? Your Honor, I think this is an issue the court has addressed. In Genentech, in fact, the declaratory judgment action was filed one day before the action filed by the patentee. So we're going to race to the courthouse. That's what you want us to do? No, I don't think so, Your Honor. Well, we all understand under Sandisk and Metamune that it's incredibly easy now to assert enough controversy to get a declaratory judgment action filed. So it's a race to the courthouse unless there's some standard you can give us other than just the declaratory judgment standard that would preclude races to the courthouse. Your Honor, I don't know that you'll ever preclude races to the courthouse in the sense that parties with differing interests will make forum selection. But I can give you an answer that pulls apart two issues that I think the district court confused. And I think as this court moves forward from Sandisk, it would be useful to disassemble. And those are these. The question before this court on this appeal is whether the district court had discretion to decline declaratory judgment jurisdiction. That is a separate and distinct question of whether under Section 1404A a district court could in its discretion transfer the California case to Texas. So too could the Texas court transfer the case to California. So too could either of them, as happens, stay. Why isn't this essentially a transfer? He said he doesn't want it. It's over there. Let them handle it. Well, Your Honor, it's not a transfer for these reasons. Analytically, it's not a transfer because Section 1404A and the cases decided under Section 1404A lay out an analytical discipline. Now, there is discretion within it, but there is an analytical discipline that would have required the court to consider such things as who filed first, where are the witnesses located, where are the documents located, which jurisdiction has more contacts with the lawsuit. And in this particular case, if you went through the 1404A analysis, the Northern District of California, in fact, has as many, if not more, contacts with this case. Now, if the court went through the 1404A analysis and it exercised its discretion transfer, that would be a different issue. In fact, it would not even come to this court on an interlocutory basis. The question of the discretion that exists to decline declaratory judgment jurisdiction, we would suggest, is a different issue that should be constrained by different factors. These are legal niceties, Mr. Lee. I still haven't heard you give me a reason why we have not taken our law to the point of races to the courthouse now. That's what we should expect in every future patent case. Your Honor, I guess the best answer I can give you is one that just comes from practical experience, because even before Medivune, declaratory judgment jurisdiction existed, and as the court knows, there were a variety of fights over it. I thought your answer to Judge Breger's question was that it isn't just a first-file situation. It's also that California is the more convenient forum. That's something the district court has to take into account. Is that not your position? That is our position. I would say I would add a third factor. It's the first-filed, California's more convenient, and the discretion that should exist in a declaratory judgment case exists to deal with circumstances like BP Chemical, where the second-filed action by the patentee has a substantive and real advantage over the first case, such as the ability to join a party in the second-filed forum that could not be joined in the first-filed forum, and that party is either necessary or it would be beneficial to have that party participate. But obviously this trial judge doesn't feel that it's the most convenient forum. He doesn't want it, so he sent it to Texas, where other cases, similar cases, have been tried. He, too, has tried similar cases. So to say that he must be obliged, nonetheless, to retain it against his will, having stated, and we know that there's a certain amount of discretion, we haven't yet focused on how much, he is really forcing him to take it when he doesn't want it. Your Honor, I would suggest that an appropriate resolution of the discretion question might be a resolution that's similar or identical to what the Sandisk panel did. The Sandisk panel said that we remand. If there are no additional facts beyond those which were on the record today, then we would expect the district court to accept jurisdiction, that is, not to decline jurisdiction. It didn't foreclose the consideration of additional facts, but it did say that on this record, on these facts, we would expect the district court to accept jurisdiction. On this record, all that Judge Fogle said is two things. One, the tenuousness of jurisdiction. Second, the existence of a second filed action. And the California action is, as Judge Dyke suggested, more convenient. Mossade's principal place of business is there. Micron is located in Idaho. One of the major rulings that will apply to some of these patents was rendered by that court. It is under 14.04a purpose analysis, a more convenient form. If that were to be imported into this analysis, it would also be the most appropriate form. And I would suggest that the discretion that exists, if there's a second filed action, because to go to Judge Rader's question, there does have to be some rules and principles to govern first filed versus second filed action. But in that connection, isn't the first filed rule potentially inconsistent with Wilton and with Brilhart? Because as I read those cases, they're sort of suggesting the opposite, that the first filed action is not going to govern, that the second filed action may be an adequate form, even though it was filed second. So how do we reconcile that with Janetta? Your Honor, I don't think they're necessarily consistent. Genentech is not laying down a rule that says the first filed action is always the action that prevails. It is presumptively saying it is the action that's entitled to proceed. And that is basically to create a symmetry, which is the purpose of the Declaratory Judgment Act. But it allows, and Genentech allows for circumstances like BP Chemical, where the second filed action, for substantive and real reasons, is the right form for the action to proceed. And I think it's reconciled on that basis. I'm into my rebuttal time, and I'll reserve that time for my rebuttal. We will save your rebuttal time, Mr. Lee. Thank you. Thank you. Good afternoon, Your Honors, and may it please the Court. I think this case is about a race to the courthouse, and I think that the rule of law that Mr. Lee is proposing would lead exactly to that. I did not hear Mr. Lee utter the key words that are in Metamune, they're in Sandisk, they're in Sony, they're in Teva, they're in all the cases, and that is there must be a definite and concrete dispute. And I suggest that while he thinks... Why isn't there a definite and concrete dispute with respect to at least the seven patents that were listed in the letters and that were the subject of suits against the competitors? For this reason, Your Honor, the original letters were sent, identified, four claims and two products. There was no response to that letter. For all we know, had the parties talked to one another, they would have found, as often happens... What case says they have to talk to each other? Pardon? What case says they have to talk to each other? Your Honor, I suggest that for there to be a definite and concrete dispute, there needs to be some interaction with the parties. I would refer, just by way of example, to Judge Bryson's concurrence in the Sandisk case, where he talks about, I see no practical stopping point short of allowing declaratory judgment actions in virtually any case in which the recipient of an invitation to take a patent license elects to dispute the need for a license and then, and then, to sue the patentee. But, Mr. Donner, this is all very theoretical. How can you say there's no dispute when there was a suit filed the next day in another forum on the very issue about which you're telling us there's no dispute? Your Honor, I think that proves our point and not Mr. Lee's point. If you look at the two complaints in this case, you will find that there's no congruity between what is urged in one case and is urged in the other case. What do you mean by congruity? There's certainly an overlap? There's some overlap, but if you look at the five cases, you look at the Hynix, the Infineon, the Samsung, the Texas case and the California case, you'll see that each one involved different patents. There were patents asserted in the Texas case that were not asserted in California and vice versa. There were patents asserted that were not mentioned in the 2001-2002 letters. That's pretty easy to manipulate. This technology isn't there. There's at least 14 patents at stake. You can drop off one or two. They overlap. We're back to the main question, which is why isn't there a controversy? There is no controversy because there needs to be some communication between the parties to show that there's a controversy. Otherwise... What case says that? Pardon, Your Honor? What case says that? I suggest that's what a definite and concrete dispute means. There needs to be an identifiable dispute. As of the original letters, when there was no response, for all Mossade knew, Micron did not agree or agree. They couldn't tell... There were four major brand producers. They sued three of them and they said they were going to get the rest. Your Honor, that may suggest that under the old test, arguably, there was a reasonable apprehension of suit. It doesn't tell you what the nature of the dispute was. It doesn't tell you what its contours were. The rule that we have right now, under Mr. Lee's rule, what will happen is no patentee will want to even talk to a potential infringer. The patentee will sue because the patentee will know that even if the accused infringer doesn't come back, there is potentially declaratory judgment jurisdiction. Why would a patentee wait? What's your rule to avoid the race to the courthouse then? My rule is that there needs to be some communication between the parties to establish dispute. My proposal... But you just said they'll talk to him and at the point they talk to him, there'll be communication and then there'll be a race to the courthouse. They may find that there's no dispute. It often happens that when litigants, potential litigants, talk to one another, they will find that the reasoning given by one party as to why there's no infringement, as to why it's invalid, as to why it's unenforceable, may lead to something other than a lawsuit. That hypothetical certainly wouldn't work here, would it? Where they had sued already three of the other four and they did sue him the next day, as our presiding judge pointed out. Your Honor, we don't know where it would work. The fact that they sued... Your Honor, I don't know that they need to talk a long time. They need to make it clear to the patentee that they disagree, that they are liable for whatever reason. I think that is what Judge Bryson... What's that accomplish? What that accomplishes, that you know then there's a dispute and then the parties can... If they sue, you know there's a dispute. If one party says you're infringing and the other party sues for declaratory judgment, that's pretty good evidence that there's a dispute, isn't it? Your Honor, the dispute has to exist before the suit is filed. The dispute cannot be created merely because the suit is filed. That doesn't tell you that there was a definite and concrete dispute between the parties. All that tells you is there's a lawsuit. Of course, once the lawsuit is filed, you know that there's a dispute. But the issue is, is there a dispute before that point? But you don't have to live in this kind of vacuum. We know the next day that they filed suit. So we know there was a dispute the next day. And you're telling us that the 24 hours makes a difference which must be ignored in trying to decide that the party who won the race to the courthouse nonetheless is evicted from the forum of choice? I'm not suggesting you should ignore anything, Your Honor. I think the fact that those two suits were filed and advanced different reasons for there being a dispute, where there's some overlap, where there's a lot of non-overlap, where there were patents that were not... that were in existence at the time of the 2001-2002 letters that were not mentioned in the Micron suit, not mentioned in the Mossade suit, but are mentioned in the Micron suit in California, that suggests that the exact nature of any dispute was not clear at the time. And, in fact, we don't know whether the non-overlapping patents would continue if the California suit were to continue. We don't know that because... Why should that make a difference? Because we know that there are patents that overlapped. Your Honor, the question is, we didn't know that there were patents that overlapped until the suits were filed. And I'm suggesting that the time as of which there must be a definite and concrete dispute has to exist before the time that the pleadings are filed in either case. But we're talking about not the creation of a dispute, but evidence that there was a dispute, that, as I recall the district court's analysis, even though he decided he had discretion not to consider the case at all, that the second filing was evidence of something. Your Honor, the second filing could have been a response to the first filing. It may be that there would not have been a suit filed had the parties spoken to one another. But if there was a response, then why shouldn't the first to choose the forum, the one who won the race to the courthouse in accordance with a good deal of the Supreme Court precedent, get substantial deference? Your Honor, if you're talking about the discretionary, if you're talking about the discretionary point, on the discretionary point, if you are talking about that, there are lots of reasons. The rule that Mr. Lee advanced, the Genentech rule, does not have, as he admitted, a concrete, immutable first to file is the governing case. Do you agree that the Genentech rule is still a rule that we have to follow? I believe that the part of the rule that basically says that the first filed rule is given deference unless considerations of judicial and litigant economy and effective disposition of suits require otherwise, I believe that that rule will still work. And I believe that in this case, if you look... And we have to follow. Pardon? We're obligated to follow that rule. I think that rule is still viable, that part of the rule. Mr. Gunner, I'm still working to figure out how we avoid a race to the courthouse. And your answer to that was, well, as long as there's some communication first, we won't have a race. Is that true? I mean, all that means is that the starting point for the race will be the first communication, right? Your Honor, what it means is that if the accused infringer can file a suit merely because the accused infringer gets a letter or a communication from the patent owner, then the patent owner will not communicate. The patent owner will first file suit and then will talk. The patent owner, in all these cases, will, if it wants to choose a forum, will pick that forum. That is... The patent owner can always do that, and it certainly would do that under a rule that says if the patent owner writes a letter and says you need a license or I accuse you of infringer and then the accused infringer can then go into a courthouse, why would the patent owner write that letter? Why wouldn't the patent owner first sue? That is my point. My point is that the patent owner will always do take that course of action, whereas if you require communication between the parties, the patent owner might or might not take that course of action. I think the courts are going to be flooded with cases filed because the patent owner won't run the risk. Of being in a courthouse, he doesn't want to file. Now there's also a rule that says even the second file rule may be preferred if the first filed case was filed for tactical reasons. In this case, Micron has admitted right on the record that it filed preemptively in order not to be in a forum it didn't want. What's wrong with that? Pardon? What's wrong with that? They thought that California was a better forum, a more convenient forum. What's the matter with their accelerating their filing to get the choice of forum? Why is that such a bad thing? Because the cases hold, there are a number of cases that hold, that the purpose of the Declaratory Judgment Act is to avoid what they called a scarecrow issue. It is not for the purpose of giving the second, the accused infringer, a choice of a forum for tactical reasons. The infringer should never have the choice of forum, but the patentee should always be able to choose the forum. Well, Your Honor, if there's a legitimate, if there's a legitimate, if there's a legitimate reason for filing a Declaratory Judgment Act, the cases talk about what's the philosophy behind the Declaratory Judgment Act. And there are at least two cases that I know of which basically, one is EMC and one is Serco, which hold that when the second filed suit, when the first filed suit is filed for tactical reasons, that is not within the basic purpose of the Declaratory Judgment Act and will not be given preference. This Court's decisions in those two cases say that. So that's what's wrong with it. Let me suggest that maybe there's a different philosophy which underlies everything that's been going on in the recent, I'll call it liberalization, of the Declaratory Judgment perspective. And that is that if an entity, a commercial entity, feels at risk, that the threshold shouldn't be quite as high for that person to go into court, choose the forum, because they would be the one making that decision, in order to clear the air. Now, somewhere in between of their adverse patents out there wanting to clear the air and being seriously at risk, there's a boundary line on one side of which one might be excluded from court. But when you look at the entirety of the circumstances for this particular relationship, isn't it rather hard to say that Micron could feel free of risk in a very important, commercial, valuable activity that they're engaged in when the patent holder has been suing everyone else, issuing threats, maybe not directly, but through the press? Your Honor, if the test was reasonable apprehension of suit, then what you say would be exactly right. I don't think the Supreme Court in Menemune set a rule that said it should be easier for a potential declaratory judgment plaintiff to go into court. You don't think so? In one respect, that they don't need to have a reasonable apprehension of suit. So there can be something less than a reasonable apprehension of suit. In that sense, it was easier. But the Court set down another rule. The Court said the dispute must be definite and concrete. And in that sense, it elevated, just in that sense, the ticket that you need to get into court. It always had to be definite and concrete. Did it not? It seemed to me the only change was in the reasonable apprehension of suit aspect. Your Honor, the Court, all of these cases, I don't know whether the cases pre-Menemune used those words definite and concrete. What I do know is that the Court in Menemune did use those words, and all of the decisions of this Court have used those words. And I think that, again, I refer to Judge Bryson's concurrence. I realize it was only a concurrence. He talked about the fact, basically, that the floodgates would be open, but you have to follow the rule. And then he talked about the fact that there needs to be an assertion by the accused infringer and then file suit. He talked about a sequence. And I think if we followed that sequence, we would limit the number of cases that would be filed under this new rule. We would eliminate the potential opening of the floodgates. And I think we'd have a much more healthy situation, not only for litigants, but for the courts. I see that my time is up. Any more questions for Mr. Dunn? Do you think the infringer ought to have to talk before bringing the suit to him? Or just the... I mean, did the patentee ought to have to talk before bringing the suit, or just the accused infringer? The infringer does not need to talk before bringing suit, because the infringer has always been able to bring suit without any special rule. The declaratory judgment rules are not on the same playing field as the basic law governing patentees. A patentee does not need to talk to anybody, because there doesn't need to be a definite and concrete dispute for the patentee to bring suit. The case law says that for the accused infringer to bring suit, that threshold needs to be met. Thank you. Thank you, Mr. Dunner. Thank you. Because we went over. If I could, let me just make three points. First, on the question of a real and substantial controversy, I would suggest that there is no requirement of some communication between the parties after metamute. But even if there were a requirement of some communication that communicated the realness and the substantiality of the threat, if the court considers the annual report that is at Appendix 248 and the press statement that is at Appendix 562, that statement says, we're going to go after the four people who occupy the DRAM market. We've already gone after three. We have 14 people on notice. They say that we're one of the people on notice and we're going to do it relentlessly. Mr. Lee, if there is no contact requirement before suit, why isn't Mr. Dunner correct that there will be no contact in the future and that the whole objective of furthering settlements will be frustrated by the declaratory judgment policy? Your Honor, I do agree. That's one of the things that Judge Bryson expressed concern about in the concurring opinion in Sandex. But I would suggest that there is a balance. And what's being balanced is, in fact, on the one hand, the policy you identified to incur settlements. But the policy of the Declaratory Judgment Act is to bring symmetry to a situation that was asymmetrical before. And that goes to my second point, Your Honor. You are correct. Once the Declaratory Judgment Act was enacted, once symmetry was provided, then a party, the declaratory judgment plaintiff, that did not have the opportunity to choose a forum before, now had an opportunity to choose a forum. And yes, that's going to result in situations that will be, as Your Honor characterized it, a race to perhaps a race to the courthouse. It certainly will result in different selection of forum. But there have been, for many years, ways to address that. The third point I'd like to make is this. Is there a threshold at all? Is there a difference between just Article III jurisdiction and the definite and real controversy standards? Your Honor, I think that... You do have to have a case or controversy, and that sounds to me like a real or substantial question. If you have a case or... If you have a real and substantial controversy that satisfies Article III, and, as the cases say, it is an issue of federal law, then the circumstances in which you can decline jurisdiction under the Declaratory Judgment Act should be a confined and discrete set of circumstances. And what are they? Well, Your Honor, I thought about your question having the opportunity when Mr. Dunner was up. And I think it should work or it could work this way. I do think the rule of genentech is correct. And the first filed action should presumptively get consideration first. If there's a second filed action, I think that under the Declaratory Judgment Act, the Court would have the discretion to decline jurisdiction in favor of the second filed form where, as in the BP chemical case, the second filed action, because it can address issues that the other party can't, because it is dispositively, without any consideration at all, a more convenient and more appropriate form. Those considerations could drive the declination of jurisdiction. Well, isn't that true here that the second case does have issues in it that are involved in the first one? Not in the sense of BP chemical, Your Honor. It has issues in the second case only because of patents that were selected to be included and not included. And then, perhaps most key, it has parties that were added, but those parties have nothing to do with Micron. And that should not be a basis to decline jurisdiction. This case, if you were to apply that rule that I've tried to articulate in answer to Judge Rader's question, would say that in this circumstance, absent other facts that the District Court didn't have before it, it should accept declaratory judgment jurisdiction. It may still consider how it's going to resolve the co-pendency of the cases. And, Your Honor, the reason I say that this wouldn't fall into the three-part test that I just articulated is this. We weren't racing to the courthouse. We filed on the very same day that Mossade was trying to vacate a ruling that we thought was beneficial. We did file on that same day in the same court and tried to prevent that. Is that tactical? For sure. But it's substantive as well. And the Declaratory Judgment Act is created in part to allow someone in our position to do that. But you're still stuck with the discretionary aspect, aren't you? We are always stuck with the discretionary aspect, but I think, Your Honor, and the facts that Your Honor has, this Court has before it, the facts that Jerry Fogle had before him at the time he decided, if those are the facts, then he should accept jurisdiction. That's not to bar him from considering additional facts, but on these facts, I would suggest that on the issue of declining jurisdiction under the Declaratory Judgment Act, as opposed to any other reason, he should accept jurisdiction. Isn't this for subject matter jurisdiction the same as the patentee sues and the accused infringer sues? In other words, you have to show the existence of a controversy before the patentee can sue too? Yes. There has to be a case for controversy both ways. So it has to be the same test? It has to be the same test. Any more questions? Thank you, Mr. Lee. Mr. Donner, the case is taken under submission.